IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **BRYANT MOTORS, INC.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 5:06-CV-353 (CAR) |
| | : | |
| **BLUE BIRD BODY COMPANY,** | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

*ORDER ON DEFENDANT'S MOTION TO VACATE ARBITRATION AWARD AND
PLAINTIFF'S MOTION FOR SANCTIONS*

Currently before the Court are Plaintiff's Application to Confirm Arbitration Award [Doc. 1], Defendant's Motion to Vacate Arbitration Award [Doc. 7], Plaintiff's Motion for Sanctions [Doc. 22], and the various responses and replies thereto. Upon consideration, Plaintiff's Petition to Confirm Arbitration Award and Defendant's Motion to Vacate Arbitration Award are **GRANTED in part** and **DENIED in part**; and Plaintiff's Motion for Sanctions [Doc. 22] is **DENIED**.

## BACKGROUND

Plaintiff Bryant Motors, Inc. ("Bryant") initiated this action seeking confirmation of the arbitration award issued in the underlying arbitration proceeding between Bryant and Blue Bird Body Company ("Blue Bird"), Case number 30 Y 181 01084 03 (the "Award"). Via cross-petition, Defendant Blue Bird seeks to vacate the Award.

This case arises out of the sale of Blue Bird school buses in the State of Washington.

1

Blue Bird manufactures and sells school buses. Bryant has been an authorized distributor of Blue Bird school buses for most of the State of Washington since 1969. Since the mid-1990s, Bryant and Blue Bird have been locked in a dispute over sales of Blue Bird buses in Washington by Blue Bird's authorized distributor in the State of Oregon, Western Bus Sales ("Western").

Blue Bird requires each distributor of its buses to enter into a school bus distribution contract which, among other things, defines a geographic area for which that distributor is responsible for selling buses. Pursuant to Blue Bird's distribution contract with Bryant (the "Contract"),[1] Bryant is assigned an "area of responsibility" that encompasses 34 of the 39 counties in the State of Washington. Blue Bird also has a school bus distribution contract with Western wherein Western's assigned area of responsibility includes the five remaining counties in Washington not included in Bryant's area of responsibility and the State of Oregon. The dispute between Blue Bird and Bryant began in 1997 when Blue Bird amended its distribution contract with Western and expanded Western's area of responsibility to include all of the State of Washington so that it overlapped Bryant's area of responsibility.

In response to the expansion of Western's area of responsibility, Bryant initiated the first arbitration proceeding ("1997 Arbitration"), which resulted in an award in favor of Bryant. The 1997 panel of arbitrators ("1997 Panel") concluded that Blue Bird had breached its obligation of good faith and fair dealing to Bryant by granting Western an overlapping area of responsibility. In response to the 1997 award, effective September 1, 2001, Blue Bird amended its distribution contract with Western to reduce Western's area of responsibility to eliminate the overlapping areas of responsibility. However, Western continued to sell school buses in Bryant's area of

---

[1] The Contract, dated July 12, 1993, has been renewed annually.

responsibility with Blue Bird's full support.

In December 2003, Bryant filed a second arbitration demand against Blue Bird, contending that Blue Bird continued to breach its distribution contract with Bryant by allowing Western to continue to sell Blue Bird buses in Bryant's area of responsibility. On August 23, 2006, a panel of three arbitrators (the "Panel" or "2006 Panel")[2] issued its detailed twenty-nine page Award of Arbitrators ("Award") in favor of Bryant. The Panel concluded that Blue Bird continued to breach its distribution contract with Bryant by facilitating Western's school bus sales in Bryant's contractual area of responsibility. "It is reasonable to assume," the Panel stated, "that if Blue Bird had not permitted and helped Western to market its product to Bryant's area of responsibility, some or all of the sales Western made would have been made by Bryant." (Award, p. 23.) The Panel reached the following conclusion:

> After reviewing all of the detailed evidence, including but not limited to expert testimony and multiple reports presented by each party regarding Western's sales and Bryant's profit margins, we find that absent Blue Bird's breach of contract Bryant would have sold a significant number of the 599 buses Western sold in Bryant's Area of Responsibility between September 1, 2001, and March 6, 2006. We further find that for purposes of calculating Bryant's lost profits, the evidence supports the use of several various alternative profit margins the parties set forth during this proceeding. Accordingly we find that Bryant's lost profits based on Blue Bird's breach of Contract total $3 million.

(Award, p. 24.)

In addition to lost profits, the Panel awarded pre-judgment interest, litigation expenses, and certain injunctive relief. Bryant now moves the Court to confirm the Award while Blue Bird cross moves to vacate certain portions of the Award, contending the Panel exceeded the scope of

---

[2] The 2006 Panel consisted of (1) Robert S. Brandt, a retired Tennessee judge, who was Chairman of the panel, (2) Anne S. Rampacek, a former partner of Alston & Bird, and (3) Bruce E. Chapin, a Florida attorney.

3

its authority in awarding lost profits and certain injunctive relief. In response to Blue Bird's motion to vacate, Bryant moved for sanctions against Blue Bird.

## STANDARD OF REVIEW

The provisions of the Federal Arbitration Act, 9 U.S.C. § § 1 et seq. ("FAA") control this Court's review of an arbitration award. Judicial review of arbitration awards is "narrowly limited," and the FAA presumes that arbitration awards will be confirmed. See Davis v. Prudential Sec. Inc., 59 F.3d 1186, 1188 (11th Cir. 1995). The FAA "does not allow courts to roam unbridled in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways." Robbins v. Day, 954 F.2d 679, 683 (11th Cir.), overruled in part on other grounds, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-49 (1995) (citations and quotations omitted). "Accordingly, parties may not seek a 'second bite at the apple' simply because they desire a different outcome.'" Marshall & Co., Inc. v. Duke, 941 F. Supp. 1207, 1210 (N.D. Ga. 1995) (quoting Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994)). "Federal courts should defer to an arbitrator's decision whenever possible." B.L. Harbert Int'l, LLC v. Hercules Steel Co., 41 F.3d 905 (11th Cir. 2006) (citing Robbins, 954 F.2d at 682).

Pursuant to 9 U.S.C. § 10(a), there are four statutory grounds for vacating an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators are guilty of misconduct in refusing to postpone the hearing,

4

> upon sufficient cause shown, or in the refusing to hear evidence pertinent and material to the controversy; or of any other misbehaviour by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Blue Bird contends that the Court should vacate the award pursuant to the fourth statutory ground, arguing that the arbitrators exceeded the scope of their authority in rendering the award.

Although the FAA provides courts with the authority to vacate an award on this ground under 9 U.S.C. § 10(a)(4), the courts exercise that authority in a limited fashion. Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," courts should refrain from vacating the arbitrator's decision. United States Postal Service v. Am. Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000). Indeed, courts should vacate the arbitrator's decision as exceeding the scope of his authority only when the arbitrator "dispense[s] his own brand of industrial justice[], ignores the unambiguous language [of the contract] chosen by the parties," id. (citations omitted), or "base[s] his award on his own personal notions of rights and wrong." Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am., 29 F.3d 126, 129 (4th Cir. 1994) (citation omitted).

## DISCUSSION

Blue Bird contends the 2006 Panel exceeded its powers in rendering the following awards to Bryant:

5

(1) the award of lost profits because the distribution contract expressly prohibits an award of consequential damages;

(2) the award of injunctive relief granting Bryant an exclusive territory until July 13, 2009, because the contract grants no such exclusive territory;

(3) the award of injunctive relief prohibiting more than "occasional" sales by other Blue Bird distributors in Bryant's territory after July 13, 2009, because it violates the "definiteness" requirement of Fed. R. Civ. P. 65(d);

(4) the award of other injunctive relief recognizing purported rights not found in the contract; and

(5) the award of post-award, pre-judgment interest because it is not proper.

**Lost Profits**

Blue Bird contends that the $3 million awarded for lost profits is contrary to the contractual prohibition against an award of consequential damages.[3] Blue Bird argues that the Distribution Contract is governed by the UCC, and under the UCC, a buyer's lost profits from the resale of goods are consequential damages. Thus, Blue Bird contends, the lost profits awarded in this case, as a matter of law, are consequential damages, and therefore the Panel exceeded its authority in awarding lost profits. Bryant, on the other hand, points out that Blue Bird's contentions were argued, considered, and rejected by both the 2006 Panel and the 1997 Panel. Bryant contends that the Panel's finding that the $3 million awarded for lost profits are direct

---

[3] The Distribution Contract contains a paragraph entitled "Limitation of Damages," which states in its entirety: "Blue Bird will not be liable to Distributor for incidental and consequential damages arising out of any breach of this Contract or the relationship with the Distributor or any termination of their relationship."

6

damages, not consequential damages, is correct, and therefore the Panel did not exceed its powers in awarding lost profits. The Court agrees.

The 2006 Panel, as well as the 1997 Panel, explicitly rejected Blue Bird's argument that damages from the lost school bus sales were consequential as opposed to direct damages. As the 2006 Panel explained:

> We agree with two conclusions implicit in the prior panel's damages awards: (i) it is reasonable to assume that, if Blue Bird had not permitted and helped Western to market its products in Bryant's Area of Responsibility, some or all of the sales Western made would have been made by Bryant; and (ii) damages for lost profits are not the type of "consequential" damages which the parties waived and instead constitute the proper measure of Bryant's direct damages. *See Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641, 643-44, 490 S.E. 2d 124, 127 (1999) (lost profits are direct damages where they represent the benefit of the bargain). We therefore reject Blue Bird's arguments regarding the availability of damages and the measure of damages, which we note are the same arguments Blue Bird advanced in the prior arbitration.

(Award, p. 23.)

The 2006 Panel recognized that under Georgia law, lost profits may be consequential damages or direct damages, citing Imaging Sys. Int'l, Inc., 227 Ga. App. at 643-44, 490 S.E.2d at 127 ("Consequential damages, which may include 'profits which might accrue collaterally as a result of the contract's performance,' are a separate concept from direct damages, which may include 'profits necessarily inherent in the contract. . . . Thus, there are two types of lost profits: (1) lost profits which are direct damages and represent the benefit of the bargain. . . and (2) lost profits which are indirect or consequential damages."). After considering the law and the parties' arguments, the 2006 Panel, like the 1997 Panel before it, concluded that an award of lost profits represented direct, not consequential damages.

The 2006 Panel clearly considered and evaluated the parties' arguments, the relevant law,

7

and the contractual language. Thus, this Court cannot find that the Panel "dispense[d] [its] own brand of industrial justice," or ignored the language of the contract or based the award on its own notions of right and wrong. See United States Postal Service, 204 F.3d at 527; Island Creek Coal Co., 29 F.3d at 129. The award of lost profits is therefore CONFIRMED.

**Injunctive Relief**

Exclusive Area of Responsibility

As part of the injunctive relief awarded, the 2006 Panel enjoined Blue Bird from allowing Western or any other Blue Bird distributor to sell buses within Bryant's area of responsibility until July 13, 2009, and thereafter, only allowing distributors to sell "on occasion." The Panel stated:

> So long as Bryant's Contract remains in effect, Blue Bird shall not permit Western or any other Blue Bird distributor to sell buses in Bryant's area of responsibility until July 13, 2009. Thereafter, provided Blue Bird has fully complied with all terms of this Injunction, and for so long as Bryant's Contract remains in effect, Blue Bird shall permit Western or any other Blue Bird distributor to sell in Bryant's Area of Responsibility only "on occasion," meaning infrequently, in a non-routine fashion, irregularly, occurring only now and then, and shall do so only on the same terms and conditions Blue Bird permits out-of-area sales in other parts of the United States.

(Award, pp. 27-28.)

Blue Bird argues that the Panel had no authority to preclude Blue Bird from permitting Western or any other Blue Bird distributor to sell buses in Bryant's area of responsibility until July 13, 2009. Blue Bird contends such an award unlawfully re-defines Blue Bird's distribution contract to temporarily ban *all* competing sales when the contract allows *occasional* competing sales, and therefore the Court should vacate this portion of the Award. The Court disagrees.

8

The Panel did not exceed the scope of its authority in rendering this equitable relief. The Panel detailed its findings establishing how Blue Bird's actions since September 1, 2001, in breach of the express terms of Bryant's contract, have favored Western "to the distinct and increasing disadvantage of Bryant in the intraband competition Blue Bird has been fostering in Bryant's area of responsibility since 1997." (Award, p. 21.) By enjoining Blue Bird from allowing sales in Bryant's area of responsibility by other distributors until July 13, 2009, the Panel rendered appropriate injunctive relief in response to Blue Bird's breach. Again, the Court cannot find that the Panel "dispense[d] [its] own brand of industrial justice," or ignored the language of the contract, or based the award on its own notions of right and wrong. See United States Postal Service, 204 F.3d at 527; Island Creek Coal Co., 29 F.3d at 129. Thus, this portion of the Award is CONFIRMED.

Allowing Sales "On Occasion"

Also as part of the injunctive relief awarded, the Panel defined "on occasion" to mean "infrequently, in a non-routine fashion, irregularly, occurring only now and then, and . . . only on the same terms and conditions Blue Bird permits out-of-area sales in other parts of the United States." (Award pp. 27-28.) Blue Bird contends that the Panel's definition of the contract's "on occasion" language is not specific enough to satisfy Federal Rule of Civil Procedure 65(d). Rule 65(d) states, in relevant part, that "[e]very order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail . . . the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). Under Rule 65(d), "an ordinary person reading the court's order should be able to ascertain from the document exactly what conduct is proscribed." Hughey v. JMS Dev., 78 F.3d 1523, 1531 (11th Cir. 1996) (citation omitted). Blue Bird argues the Panel's definition

9

fails to meet this definiteness requirement because it fails to adequately inform Blue Bird about what conduct is prohibited. The Court disagrees.

Like the 2006 Panel, this Court finds no ambiguity in the meaning of "on occasion." The Panel's definition is in accordance with the ordinary meaning of the synonymous terms "occasional" and "occasionally," and the Panel articulated a more detailed meaning of "on occasion." (See Award, p. 16.) The Court finds that the 2006 Panel's definition adequately informs Blue Bird about what conduct is prohibited–any sale of Blue Bird buses in Bryant's area of responsibility except occasional ones–and an ordinary person, as well as the parties, can certainly ascertain that the Panel's definition is a significant limitation on out-of-area sales. Thus, this portion of the Award is also CONFIRMED.

### Other Injunctive Relief

Blue Bird contends that the following provisions of the Award should be vacated because they do not "draw their essence from any provision of the contract." (Def. Resp. Br., p. 6, Doc. 23) (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) for the proposition that an arbitration award must "draw its essence" from the underlying contract). The 2006 Panel awarded the following equitable relief:

> So long as Bryant's Contract remains in effect, Blue Bird shall treat all information concerning the plans of a school district within Bryant's Area of Responsibility to purchase school buses which it obtains through Bryant Motors or in meetings with Bryant Motors and such school district in strict confidence and shall not disclose such information to any other Blue Bird distributor unless and until such information is a matter of public record.
>
> ***
> So long as Bryant's Contract remains in effect, Blue Bird, upon receipt of any complaint or request for service from any school district within Bryant's Area of Responsibility, shall promptly forward the complaint or request to Bryant Motors, shall promptly consult with Bryant Motors about the complaint or

> request, and shall promptly provide support which Bryant reasonably requests
> or Blue Bird determines is necessary in order to satisfy the school district.

(Award, p. 28.)

This relief, Blue Bird argues, purports to recognize rights that do not exist in the Contract: (1) the Contract contains no provision which addresses the confidentiality of information supplied by a distributor to Blue Bird, and (2) the contract does not grant Bryant a "right" to service Blue Bird school buses; it grants only a limited right to sell Blue Bird school bus products. Because this relief does not "draw its essence" from the Contract, Blue argues, the Court should vacate this portion of the Award. The Court disagrees and finds that the Panel did not exceed their powers in rendering this relief.

As stated by Bryant, these portions of the Award are basic admonitions for Blue Bird to "keep confidential what is confidential" and to report and consult with Bryant over customer complaints. The admonitions are consistent with Contract's requirement that Bryant effectively promote the sales and servicing of school buses and school bus parts in its area of responsibility. The Contract

> obligates Bryant to 'effectively promote the sales and servicing of Agreed
> Products' in its Area of Responsibility, and, among many other specified
> duties, to 'employ sufficient numbers of qualified employees to promote and
> service Blue Bird products within the Area of Responsibility,' to 'maintain an
> attractive place of business within the Area of Responsibility of sufficient size
> and with sufficient service and parts facilities to promote the Agreed Products
> effectively,' to 'maintain an inventory of service parts adequate to service the
> Agreed Products within the Area of Responsibility.

(Award, pp. 3-4.) Moreover, these awards were fashioned in direct response to the Panel's findings that Blue Bird failed to give Bryant the same opportunity to take corrective action with respect to customer complaints as it gave to Western, and Blue Bird fostered an atmosphere of

mistrust that, among other things, "reasonably led Bryant to be unwilling to disclose to Blue Bird purchase planning information it obtained from school districts in its Area of Responsibility for fear that Blue Bird would pass this information along to Western and impair Bryant's ability to compete for sales to these school districts." (Award, p. 21.) Again, the Court cannot find that the Panel, in rendering these awards, "dispense[d] [its] own brand of industrial justice," or ignored the language of the contract, or based the award on its own notions of right and wrong. See United States Postal Service, 204 F.3d at 527; Island Creek Coal Co., 29 F.3d at 129. Therefore, these portions of the Award are also CONFIRMED.

**Post-Award Interest**

Blue Bird finally contends that the Panel exceeded its powers by awarding "post-award interest at the rate authorized by Georgia law for post-judgment interest." (Def. Resp. Br., p. 20, Doc. 23.) The Panel made the following award of pre-judgment interest:

> We agree with the prior panel's conclusion that Bryant is entitled to pre-judgment interest on damages awarded for Blue Bird's breach of Contract. *See Southern Trust Insurance Co. v. Braner,* 255 Ga. 117, 335 S.E.2d 547 (1985) (O.C.G.A. § 13-6-13 provides for prejudgment interest in breach of contract cases where damages are unliquidated); *Hadden v. Shaheen & Co.*, 231 Ga. App. 596, 499 S.E.2d 693 (1998) (absent a provision to the contrary in the arbitration agreement, arbitrators have inherent power to award pre-judgment interest); O.C.G.A. § 13-6-13. Blue Bird has stipulated that the pre-judgment interest rate allowed by law is seven percent per annum. Accordingly, we award pre-judgment interest in the amount of $500,000.

Award, pp. 24-25. Blue Bird argues that post-award, pre-judgment interest is not a matter for the arbitrator decide, and any award of post-award, pre-judgment interest should be based upon the award of pre-judgment interest under state law, here, O.C.G.A. § 7-4-2(a)(1)(A), which is seven percent per annum. The Court agrees.

Under federal law, the prevailing party in FAA arbitration-confirmation proceedings "is

presumptively entitled to post-award, pre-judgment interest." Lewis v. Haskell Co., Inc., 304 F. Supp. 2d 1347, 1350 (M.D. Ala. 2004); see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshuttle GmbH, 141 F.3d 1434, 1446-47 (11th Cir. 1998) ("[P]rejudgment interest is not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his, and absent any reason to the contrary, it should normally be awarded when damages have been liquidated by [an arbitration award].") (internal quotations omitted). The applicable interest rate depends on the source of the Court's jurisdiction. Because the Court has jurisdiction over this case based on diversity of citizenship, the interest rate should be set by state law. Id. (citing Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead, 162 F.3d 1101, 1110-11 (11th Cir. 1998)). Under Georgia law, "the legal rate of interest shall be 7 percent per annum simple interest where the rate percent is not established by written contract." O.C.G.A. § 7-4-2(a)(1)(A).

Based on the above-cited principles, Bryant is entitled to post-award, pre-judgment interest for the period between when the arbitration award was entered and when the award is satisfied by Blue Bird. Although the Panel recognized that the rate was seven percent per annum, the Panel exceeded its authority in awarding $500,000 as pre-judgment interest. Thus, the $500,000 award as post-award, pre-judgment interest is VACATED. Bryant shall recover from Blue Bird post-award, pre-judgment interest on the Award for the period between when the arbitration award was entered and when the award is satisfied by Blue Bird at the rate of seven percent per annum, in accordance with O.C.G.A. § 7-4-2(a)(1)(A).

**Motion for Sanctions**

In response to Blue Bird's Motion to Vacate the Arbitration Award, Bryant moved this Court to impose sanctions against Blue Bird pursuant to B.L. Harbert Int'l, LLC v. Hercules Steel

Co., 441 F.3d 905 (11th Cir. 2006). In Harbert, the Court of Appeals warned that "if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." Id. at 913. Bryant argues that Blue Bird's motion to vacate is both frivolous and without a legal basis, and therefore Blue Bird should be sanctioned for needlessly prolonging this litigation. The Court disagrees and does not find sanctions appropriate in this case. Blue Bird's arguments were neither frivolous nor without a legal basis. Therefore, Bryant's Motion for Sanctions is DENIED.

## CONCLUSION

In accordance with the foregoing, Plaintiff's Motion to Confirm Arbitration Award [Doc. 1] and Defendant's Motion to Vacate Arbitration Award [Doc. 7] are **GRANTED in part** and **DENIED in part**, and Plaintiff's Motion for Sanctions [Doc. 22] is **DENIED**.

**SO ORDERED** this 25th day of June, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

SSH/aeg